UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BIOCONVERGENCE LLC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-mc-00017-SEB-MG ) |
| JASPREET ATTARIWALA, | ) ) |
| Defendant. | ) ) |
| EMERGENT BIOSOLUTIONS, INC., | ) ) |
| Interested Party. | ) |

**ORDER**

The U.S. District Court for the District of Columbia (the "D.C. Court") transferred this subpoena-enforcement action to this Court on March 6, 2023 pursuant to Fed. R. Civ. P. 45(f). [Filing No. 12]. Pending before the Court are two related motions that are ripe for a decision. First, BioConvergence, LLC, *dba* Singota Solutions ("Singota") has moved to compel compliance with a document subpoena that it issued to Emergent Biosolutions, Inc. ("Emergent") on July 31, 2020 (the "Subpoena"). [Filing No. 1.] In response, Emergent filed a Motion to Strike, primarily arguing that Singota's Motion to Compel is untimely. [Filing No. 15.] The Court also ordered Emergent to respond to the substantive arguments in Singota's Motion to Compel, beyond the untimeliness arguments contained in Emergent's Motion to Strike. [Filing No. 28].

# I.
## BACKGROUND

Singota issued the Subpoena in connection with a long-running and oft-contentious trade secrets and non-solicitation case originally filed in February 2019 by Singota against its former employee, Jaspreet Attariwala. That case has been pending in this Court for more than four years in Case No. 1:19-cv-01745, *BioConvergence, LLC v. Attariwala* (the "<u>Underlying Litigation</u>") and has spawned more than 500 docket entries to date. Indeed, the Court has described that case as having "a prolix and labyrinthine factual and procedural history." [Underlying Litig., at Dkt. 226 at 2.] In the Underlying Litigation, Singota alleges that Ms. Attariwala misappropriated its proprietary, confidential, and trade secret material as she was exiting her employment with Singota and transitioning to new employment with Emergent. (Ms. Attariwala ultimately worked for Emergent for less than one year.)

The allegations asserted by Singota related to Ms. Attariwala's interactions with Emergent have been summarized elsewhere by the Court as follows:

> On or about October 4, 2018, Attariwala reached out via LinkedIn to Patrick DePalma, Senior Director of CMO Business Development for Emergent, regarding a job posting within his group at Emergent. DePalma responded by sending Attariwala a posting for the open business development position at Emergent. He explained that he was looking to fill a position that would cover New England and California and informed Attariwala that she could "manage the territory remotely" and that he would be "open to tailoring your territory based on your relationship." DePalma explained that the "[p]rimary charter is to focus on fill/finish at our Baltimore site," and there would be cross-selling opportunities for "a viral fill/finish site in Rockville [Maryland] that will be CMO ready in 2019."
>
> From October 8 through November 2, 2018, Attariwala: (1) spoke with DePalma by telephone regarding the job opportunity with Emergent; (2) submitted a job application and resume; and (3) met with DePalma over dinner to discuss the position. Interviews were scheduled for Attariwala at Emergent on November 28, 2018. On November 22, 2018, Attariwala forwarded an email from her Singota email account to her personal email account that contained a lead for a prospective client opportunity that Attariwala had received at Singota. On November 28, 2018, Attariwala met and interviewed with several high-ranking

employees in Emergent's CMO group. On November 30, 2018, Attariwala by email to DePalma from her personal email account passed on a potential business prospect that she had received while employed at Singota, the subject line of which stated: "Potential Lyo Lead" (referring to lyophilization services which are provided by both Singota and Emergent). On December 10, 2018, Emergent informed Attariwala that the company planned to extend a formal job offer to her. The next day, on December 11, 2018, Emergent emailed Attariwala a written job offer, which Attariwala accepted on December 11, 2018. On December 12, 2018, Attariwala tendered her notice of resignation to Singota via email.

After her departure, Singota learned that Attariwala had forwarded emails from her Singota account to her personal email address on November 19, November 22, December 10, and December 11, 2018, which included Singota's business development strategies; business opportunities; aseptic filling and other processes; upcoming meetings with Singota's prospective clients; prospective client contact information, including the type and number of drugs the business contact was developing, and procedures for client initiation. Within minutes of her acceptance of [Emergent's] job offer on December 11, 2018, Attariwala used her Singota-provided computer to access Singota's "client relationship management" database and to generate lengthy reports relating to Singota's clients and prospects. She created a folder entitled "Jessie Docs," to which she saved these reports, along with hundreds of other Singota documents containing confidential information, including but not limited to customer names and contact information, active contract and project information, dozens of documents relating to Singota's VanRx SA25 system, and voluminous business leads that she had acquired in her position at Singota. Shortly after submitting her notice of resignation to Singota on December 12, 2018, Attariwala copied additional lists of business development leads and other confidential documents from Singota's computer system into her "Jessie Docs" folder.

On December 19, 2018, Attariwala used Singota's confidential information to create a cloud-based document entitled "Leads – Emergent" that contained information on current and prospective Singota clients. Later that day, Attariwala also copied her entire Singota "inbox" and "sent" email folders, which included more than 10,000 emails and thousands of attachments, many of them highly confidential. On December 19 and December 20, 2018, Attariwala accessed and copied more Singota information, including several documents related to lyophilization projects and lyophilization clients. Beginning on December 19, 2018, Attariwala copied the entire contents of the "Jessie Docs" folder (including the documents and files described above) from her Singota computer to a personal hard drive device, and then transferred the material to a personal computer. A copy of the "Jessie Docs" folder (containing the thousands of confidential Singota documents) was created by Attariwala or someone working with her on February 27, 2019—while Attariwala was working for Emergent, within a few hours after she learned that she had been sued in the Attariwala Litigation. In addition to these alleged acts of misappropriation,

Attariwala emailed multiple Singota clients and prospective clients in December of 2018 to inform them of her departure from Singota and plans to work for another company, promising to be back in touch in January of 2019, after she started her new job. In one email, Attariwala told such a Singota customer that she would be working in a "[s]imilar role, CMO Business Development" and even shared a link to a portion of Emergent's website titled "Manufacturing Expertise."

Attariwala left Singota sometime in December of 2018 and began working for Emergent on February 11, 2019. During January of 2019, Singota began to discover evidence that Attariwala had engaged in unauthorized communications with current and prospective Singota clients in December of 2018. On January 18, 2019, Singota demanded Attariwala cease and desist from further breaches of her employment agreement, identify all Singota confidential information she possessed, and comply with all the terms of her contract. Singota also corresponded with Emergent's General Counsel on that day to inform [Emergent] of Attariwala's employment agreement and her alleged breaches, specifically, that she was "reaching out to Singota clients while she was still employed by Singota to inform those contacts that she was going to Emergent and would contact them in January after she began her new position." Singota included a copy of its employment agreement with Attariwala in its notice to Emergent and requested that it take the necessary steps to ensure that she complies with her obligations.

The parties initially disagreed about whether Attariwala's parting emails constituted a breach of her employment agreement with Singota, based on [Emergent's] own independent investigation and conversations with Attariwala. Nonetheless, Emergent was willing to comply with Singota's request that Emergent ensure that Attariwala fulfill the terms of her employment agreement with Singota. Emergent informed Singota that it would require Attariwala's employment be subject to the following terms: (1) she would comply with the confidentiality and propriety information provisions of the agreement, (2) during the restrictive covenant period, she would not service, directly or indirectly, the clients from the list Singota provided her to be transitioned, and (3) she would be excluded from working directly or indirectly with the VanRx SA25 technology. [Emergent] requested that [Singota] provide a list of Attariwala's former clients with whom she was prohibited from working with during the period when her restrictive covenant with Singota was in effect.

On February 6, 2019, DePalma requested of Attariwala that she provide him with a "high level client list from your time at Singota." Docket No. 31, at 13. In response, Attariwala emailed DePalma a list of eight Singota clients and prospects with whom she had worked while employed by Singota. On February 11, 2019, the day on which Attariwala began her employment with Emergent, she executed an agreement with Emergent to abide by the restrictions of her employment contract with Singota, specifically, with the confidentiality and non-solicitation provisionsOn February 27, 2019, Singota filed suit against Attariwala in the Monroe County, Indiana court, which case was removed by Attariwala to

4

>this court on April 30, 2019. Attariwala continued working for Emergent until approximately December 18, 2019, when this court granted a preliminary injunction at the request of Singota enjoining Attariwala from working for Emergent, or any other competitor of Singota.

[*BioConvergence, LLC v. Emergent Biosolutions, Inc.*, Case No. 1:21-cv-02163, at Dkt. 76 at 5-10 (internal citations and footnotes omitted).]

Singota sought to add Emergent as a party in the Underlying Litigation "[a]fter more than two years of litigation against Attariwala in that [Underlying Litigation], and well after the case management deadlines had passed." [*Id.* at 1.] Unsurprisingly, the Court "denied this request as patently untimely." [*Id.* at 1-2.] "Unhappy with that denial," Singota filed a separate lawsuit against Emergent in this Court, as well as in Emergent's home state of Maryland. [*Id.* at 2.] This Court ultimately dismissed Singota's lawsuit against Emergent in this Court, finding that it lacked personal jurisdiction over Emergent. [Case No. 1:21-cv-02163, at Dkt. 76.] Singota's lawsuit against Emergent in a federal court in Maryland remains pending. [*BioConvergence LLC v. Emergent Biosolutions, Inc., et al.*, D. Md. Case No. 1:21-cv-01959-CCB.]

With this lengthy and pervasive litigation history providing a backdrop, the Court turns to the Subpoena. Singota issued the Subpoena to Emergent (dated July 31, 2020), which called for the production of documents responsive to the Subpoena by August 28, 2020. [Filing No. 1-2 at 2.] Although a non-party to the Underlying Litigation, the Subpoena included 52 distinct requests to Emergent, as well as additional sub-parts.[1] [Filing No. 1-2 at 8-20.] Emergent served Singota with its Responses and Objections to the Subpoena on August 28, 2020. [Filing

---

[1] Counsel are reminded of their obligation to be precise in their requests, especially to third parties, and not use discovery in a manner that could be interpreted as harassment. *See* 7th Cir. Standards for Prof. Conduct, *Lawyers' Duties to Other Counsel*, at ¶¶ 10, 23.

5

No. 1-8.]  Emergent produced 27 pages of documents responsive to the Subpoena on October 19, 2020.  [Filing No. 1-9.]

That is where the matter stood for nearly two years, until July 3, 2022, when counsel for Singota began emailing Emergent's counsel about the Subpoena once again.  [Filing No. 1-10 at 6-7.]  Counsel for the parties apparently held a meet-and-confer teleconference on July 21, 2022.  [Filing No. 1-10 at 4.]  On August 3, 2022, Emergent sent Singota a letter indicating that "an independent third-party analysis of Emergent['s] ESI has not identified any relevant documents or ESI outside the documents and ESI previously referenced in Singota's First Amended Complaint" and provided a copy of the devices and accounts searched and the search terms used.  [Filing No. 1-11.]  Singota responded by a letter dated August 25, 2022, stating that Emergent's letter "is largely non-responsive to the pending discovery issues."  [Filing No. 1-12.]  In response, the next day, Emergent indicated that it would be supplementing its document production the following week—which it apparently did not do until November 9, 2022,[2] when Emergent served Singota with supplemental responses and objections, a supplemental production of 157 pages, and a privilege log.  [*See* Filing No. 1-16.]

Singota initiated this subpoena-enforcement matter in the D.C. Court on January 10, 2023 by filing its Motion to Compel.  [Filing No. 1.]  Singota's Motion asks the Court to compel Emergent to produce documents responsive to 13 of the 52 original requests.  [Filing No. 1-1 at 5-6.]  The D.C. Court transferred the matter to this Court effective March 6, 2023 by way of an order dated February 21, 2023.  [Filing No. 11; Filing No. 12.]

---

[2] Counsel are reminded of their obligation to adhere in good faith to their promises to opposing counsel.  *See* 7th Cir. Standards for Prof. Conduct, *Lawyers' Duties to Other Counsel*, at ¶ 6.

## II.
### DISCUSSION

### A. Singota's Oversized Brief

The Court first addresses a preliminary matter raised by Emergent—that Singota's Memorandum in Support of its Motion to Compel should be stricken because, at 42 pages, it exceeds this Court's 35-page limit in S.D. Ind. L.R. 7-1(e). [Filing No. 16 at 5-7.] The Court can quickly dispense with this argument. The brief was originally filed in the U.S. District Court for the District of Columbia, and its Local Rules provide for a 45-page limit. D.D.C. LCvR7(e). Emergent provides no authority for the proposition that Singota had an obligation to revise its brief after it was transferred to this Court. Therefore, Singota's request that the Court strike Singota's Motion to Compel on these grounds is DENIED.

### B. Timeliness

Whether considered in connection with Emergent's Motion to Strike or an argument for denying Singota's Motion to Compel, the Court next considers the timeliness of Singota's request that the Court enforce the Subpoena, which was issued on July 31, 2020.[3] The Court opens by observing that the deadline for completing fact discovery in the Underlying Litigation was October 14, 2022. [Underlying Litig. at Dkt. 403.] The deadline for completing damages discovery was January 10, 2023. [*Id.* at Dkt. 382.] Notably, these deadlines reflect numerous extensions (at least six by this Court's count) sought by Singota and granted by the Court; the

---

[3] While the issue of whether a timeliness argument is properly raised in a motion to strike on in opposition briefing does not appear to be decided, the Court tends to agree with Singota that motions to strike are generally disfavored because it results in piecemeal litigation. [*See, e.g.*, Filing No. 28 (finding that "the interests of judicial economy and efficiency would be best served by having the opportunity to address all issues at once, rather than piecemeal orders").] The Court will treat Motion to Strike briefing as a response to Singota's Motion to Compel.

original deadline for liability discovery was way back on April 17, 2020.[4]  [*Id.* at Dkt. 40 (original 4/18/20 deadline); Dkt. 197 (9/14/20); Dkt. 225 (1/12/21); Dkt. 265 (6/14/21); Dkt. 311 (12/31/21); Dkt. 382 (8/31/22); Dkt. 403 (10/14/22).]  And, this Court previously rejected a request by Singota, [*id.* at Dkt. 404], to extend the discovery deadline to November 29, 2022 so that it could continue its pursuit of third-party discovery, including against Emergent.  The Court's September 20, 2022 Order denied that extension because Singota "does not meet the burden of establishing good cause and diligence for the requested extensions."  [*Id.* at Dkt. 408.]  Undaunted by that Order, nearly four months later, Singota filed its Motion to Compel in the D.C. Court on January 10, 2023.  [Filing No. 1.]

Emergent says the Subpoena is untimely because it was filed well after the fact discovery deadline of October 14, 2022 in the Underlying Litigation.  [*See* Filing No. 16 at 3-5.]  Emergent also argues that waiting nearly two years to seek further responses from the Subpoena is *per se* untimely.  [Filing No. 16 at 3 (noting that Singota "sat on its subpoena for <u>nearly two years</u>").]

Singota argues that its enforcement effort is timely because it filed its Motion on the same day (January 10, 2023) as the deadline for damages and "all remaining discovery."  [Filing No. 17 at 7; Filing No. 31 at 7.]  But the 13 document requests for which Singota seeks compliance plainly concern facts and liability.  Singota says that even if October 14, 2022 is the appropriate deadline, its Motion is not untimely because "the parties were continuing to negotiate."  [Filing No. 17 at 7.]  It also notes that Emergent continually promised that further productions were forthcoming and says that it relied on these statements.  [Filing No. 17 at 8.]

---

[4] To be sure, not all the extensions were necessitated by Singota's actions or inactions, and the Court in no way is suggesting that all fault lies with Singota for delays in the Underlying Litigation.  For one thing, once Ms. Attariwala filed a Chapter 13 bankruptcy petition in December 2019, [Underlying Litig., at Dkt. 123], aspects of this case were subject to an automatic stay until June 2020, [*id.* at Dkt. 213].

The Federal Rules of Civil Procedure do not place an outside date on the filing of a motion to compel subpoena compliance. Fed. R. Civ. P. 45(d)(2)(B)(i) ("*At any time*, on notice to the commanded person, the serving party may move the court … for an order compelling production or inspection.") (emphasis added).  However, pursuant to Fed. R. Civ. P. 16(b), district courts set case management deadlines and schedules.  And, the Seventh Circuit has observed that "[a] good judge sets deadlines, and the judge has a right to assume that deadlines will be honored." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996).  "The flow of cases through a busy district is aided, not hindered, by adherence to deadlines." *Id.*  And, "[o]nce a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party can not decide for itself when it feels like pressing its action and when it feels like taking a break because trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible." *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005).

Once a judge sets deadlines under Fed. R. Civ. P. 16(b), they "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The Seventh Circuit has explained that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citation omitted).  The movant bears the burden of establishing its diligence. *Id.*  And, "a party cannot establish diligence based solely on its conduct *after* being alerted that it missed a deadline." *McCann v. Cullinan*, 2015 WL 4254226, at *12 (N.D. Ill. July 14, 2015).

Singota's briefing skips over Fed. R. Civ. P. 16(b)(4) and the diligence requirement.  First, the discovery sought by the Subpoena concerns liability (not damages), and that deadline passed on October 14, 2022—*i.e.*, about three months prior to Singota's Motion to Compel.  The discovery sought by Singota generally concerns the terms of Ms. Attariwala's employment with

9

Emergent and what customers or products she may have serviced during her tenure at Emergent. [*See* Filing No. 1-1 at 7-9 (summarizing the 13 requests that are the subject of Singota's Motion).] Indeed, Singota had previously explicitly sought an extension for liability discovery, citing its third-party discovery requests to Emergent. [Underlying Litig., at Dkt. 404.] But the Court expressly denied that request, plainly stating that Singota failed to show good cause and diligence for the requested extension. [*Id.* at Dkt. 408.]

      Second, even if the Court accepts Singota's argument that the discovery it seeks from Emergent is properly classified as "damages discovery" or "all remaining discovery" (a category meant to capture other non-liability and non-fact discovery that may be needed before trial), and thus has a January 10, 2023 deadline for completion, the Motion is still untimely. That is so because Singota's request "is at least somewhat audacious as it completely ignores the fact that discovery was set to close a couple hours after it was filed on [January 10]." *Alight Solutions v. Thomson*, 2021 WL 5119111, at *1 (N.D. Ill. Nov. 3, 2021). According to the ECF records available to the Court, Singota's Motion was filed with the D.C. Court at 10:46 PM EDT on January 10. To this Court, it is unclear what Singota believes could have realistically occurred in the 1 hour and 14 minutes that remained in the damages-discovery period. *See, e.g.*, *Sanchez v. Hagan*, 334 F.R.D. 180, 181 (N.D. Ill. Feb. 3, 2020) ("But plaintiff's motion [to compel] was filed *after* the close of business – 5:31 pm –on that date. Discovery then wasn't 'closing,' it *had* closed."). It is obvious therefore, that the extensive discovery sought by Singota in its Motion to Compel would "necessitate a reopening of discovery for a lengthy and indeterminate period of time." *See Alight Solutions*, 2021 WL 5119111, at *1; *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (finding that a motion to compel filed on the last day of the discovery period was untimely because party waited months to file motion).

The question, then, is whether Singota has established "good cause" for the reopening of discovery period under Fed. R. Civ. P. 16(b)(4). The answer is a resounding "no." Singota had Emergent's responses, objections, and document production in hand by October 2020. Singota then did nothing until July 3, 2022. This delay does not reflect diligence under even the most gracious understanding of the term. *See, e.g.*, *Hoggard v. Doctor's Assocs. Inc.*, 2015 WL 6871207, at *3 (S.D. Ind. Nov. 6, 2015). Singota makes only a half-hearted attempt to explain the 21-month delay by referencing its unsuccessful effort to add Emergent to the Underlying Litigation and the subsequent lawsuits it filed against Emergent. [Filing No. 31 at 8 (suggesting that it did not pursue the Subpoena because "Singota's goal was to *avoid* duplication of discovery efforts").] But this explanation does nothing to advance a finding that Singota was diligent in pursuing documents from Emergent as part of its ongoing case against Ms. Attariwala.

Furthermore, even if the Court were to set aside the 21-month delay, Singota has also not established that it was diligent once it resumed its efforts in July 2022. For one thing, after receiving the November 9, 2022 supplement, Singota waited another two months to file its Motion to Compel.[5] And, while the Court certainly expects and prioritizes Fed. R. Civ. P. 34 and S.D. Ind. L.R. 37-1 meet-and-confer efforts by parties to resolve discovery disputes, these efforts do not provide a good reason to upset case deadlines absent involvement and approval from the Court. *See, e.g.*, *Sanchez*, 334 F.R.D. at 181 ("Waiting to the end was not a viable option and had nothing to commend it."). Thus, the Court finds that Singota's Motion to Compel is untimely, and further, that Singota has not established good cause for extending the discovery

---

[5] This delay also further contrasts Ms. Attariwala's *pro se* motion to compel, filed six days after the October 14, 2022 deadline and after Singota's repeated yet unfulfilled promises to her that it would produce documents. [*See* Underlying Litig., Dkt. 428.]

11

deadline under Fed. R. Civ. P. 16(b)(4). Therefore, the Court will DENY Singota's Motion to Compel.

In a footnote, Singota presents one additional argument. Singota argues that the deadlines set by the Court for completing discovery in the Underlying Litigation have no bearing on motions seeking enforcements of subpoenas via separate, miscellaneous matters, such as this one. Singota goes so far to say that it "denies that the discovery deadlines entered in the "[U]nderlying [Litigation] would bar its Motion to Compel filed in a separate miscellaneous action." [Filing No. 17 at 7 n.1.] This is not a serious argument. One need only look at the text of Fed. R. Civ. P. 45, which specifies that a subpoena issues from the court "where the action is pending." Fed. R. Civ. P. 45(a)(2). Subpoena enforcement matters under Fed. R. Civ. P. 45 are dependent upon the underlying action that is pending (except for a handful of limited exceptions not relevant here). *See, e.g.*, *Fraunhofer-Gesellschaft Zur Förderung der Angewandten Forschung E.V., v. Sirius XM Radio Inc.*, 59 F.4th 1319 (D.C. Cir. 2023) ("[A]n ancillary court's power to … enforce subpoenas is entirely dependent upon the jurisdiction of the court in which the underlying action is pending.") (quoting *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001)); Wright & Miller 9A FED. PRAC. & PROC. CIV. § 2457 (3d ed. 2023) ("A subpoena under Rule 45 may issue only in aid of a pending action…."). *See also Miller v. Allstate Fire & Cas. Ins. Co.*, 2009 WL 700142, at *1 (W.D. Pa. Mar. 17, 2009) ("The function and purpose of a subpoena is to compel the production of document relevant to the disputed matter."). All of this is to say that deadlines in the underlying litigation are indeed relevant to a court's assessment of a motion seeking to enforce a subpoena via a miscellaneous case.

## III.
### Conclusion

"Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to them do so at substantial peril to their and their clients' interests." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 332 (citing *Brosted v. Unum Life Ins. Co. of Am.,* 421 F.3d 459 (7th Cir. 2005)). See also *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("When parties wait until the last minute to comply with a deadline, they are playing with fire."). The Court finds Singota's Motion—filed 2 ½ years after the Subpoena was initially issued and well beyond the deadlines set by the Court in the Underlying Litigation—untimely. Therefore, Singota's Motion to Compel [1] is DENIED, and Emergent's Motion to Strike [15] is DENIED as MOOT in light of the above ruling.

Date: 6/2/2023

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**